First, Adam and Brittany Lynn. Are you ready to proceed? I just need to get some notes, if that's all right. Okay. We'll have you grab some notes and come on up to the table. Okay. All right. Thank you.  Just so you can see, we'll be able to sign your sheet. Thank you. All right. The first case is Peoples v. Curtis Adam Berg, No. 516-0272. Counsel ready? Yes. Okay. Proceed. Good morning, Your Honors. May it please the Court. Counsel. Police investigations do not begin inside a person's home. To investigate a home, the police must first have probable cause that a crime has been committed. Additionally, police must have either a search warrant or there must be exigent circumstances if obtaining a search warrant is not practical. Now, in this case, the warrantless entry by the police, it was without a warrant and therefore it was a presumptive Fourth Amendment violation. The State, therefore, had the burden to prove that an exception to the warrant requirement existed. And below, the State relied on the exigent circumstances exception. Exigent circumstances here, though, does not apply because there was no probable cause that Mr. Berg had committed any offense. Further, the State doesn't even specify a specific offense that Mr. Berg was to have committed. Therefore, the Court erred by denying the motion to suppress. Further, as this was an element of the offense, the authorized entry into the home, the State also did not prove that element of the offense. This happened at about 5, 6 in the morning after a neighbor called or a friend of, I guess, Ms. Berg had called. And so, there are other circumstances like gunshots had been heard earlier in the day and so the law enforcement is responding. Here we are at about 5 in the morning. You've got a friend who is upset, I'll say. And so, that's not an emergency situation. The State raises the emergency situation for the first time on appeal. That was not raised below. Exigent circumstances requires probable cause if that's the theory that the State that was originally proceeded with. The emergency aid requires immediate need for assistance and there was no evidence to indicate that anyone in the home needed immediate assistance. Further, there was no gunshot heard. The house was empty when the gunshot happened. And I believe Brittany may have seen evidence of a gunshot, a hole in the wall, and there was pictures of that presented at trial. But there was nobody present to hear the gunshot and the house was empty except for Mr. Berg at that time. In this follow-up, there's a series of arguments that have taken place throughout the day. Again, we get to 5 or 6 in the morning when the call came from law enforcement. And even under such circumstances, your position is there was a probable cause for the law enforcement to enter the home? There's no crime, Your Honor. It's not illegal to argue with your wife or husband or wife. And there were, and it's not, it wasn't a continuous argument. They were going in and out of the house. There was a period of several hours that Mr. Berg was out of the house as well as Brittany and her friend were out of the house for another hour. And it was after Mr. Berg had returned to the home, it doesn't specify, the caller didn't specify how long the argument had been going. But it could have, well, been like 10, 15 minutes that there was an argument, which isn't unusual for a husband and wife to have an argument, especially if the husband is coming back late from going out. I mean, it's not unusual to have an argument in the morning. And that itself is not a crime. There's no probable cause to establish a crime there. The gunshot, which happened hours, at least 6 hours before that, is in an empty house. It doesn't provide probable cause for a crime. This is a very rural area. It's not illegal or unusual for a gun to be fired. Maybe in the house it is a little unusual. But nonetheless, accidents can happen. It could have been cleaning a gun. So neither of those things establishes any probable cause. And without probable cause, there is no exigent circumstances. The police came into the house to do an investigation on this domestic dispute that was alleged. The investigation should happen at the door to the home. In People v. Jones, the same kind of situation happened. A police officer saw a husband and wife arguing on the front porch. And I believe it was closed off in that case, so it was actually part of the home. He entered the area, saw that the wife was okay. And at that point, the court said he had to have exited that home. And he could continue with his investigation, but he can't continue the investigation within the house. And the same is true here. Or even more so, there is no immediate, there's no reason for the police to have entered the house to begin with. They should have went to the front door, knocked, and found and done their investigation from there. If at that point there was probable cause that something was going on, if, for example, Brittany was injured or she was being evasive and said something about Curtis, and there was probable cause for either of them at that point, then the police could have exigent circumstances to enter the home or get a warrant. That's always an option. The police could have gone to the court and gotten a warrant to enter the home. But again, that would likely be denied because there was no probable cause here. But to that point, it's one thing if, say, for instance, you have probable cause that there's some drug activity going on at home. There's a report of an ongoing domestic dispute and possible gunshots fired in the house during the day. Under a totality of circumstances, wouldn't that give a police officer probable cause to investigate and go in and make sure someone is safe when you look at all those circumstances together? Safety is not the factor in the exigent circumstances analysis. And this should be based on what the officers knew. And what they knew is that the gunshot happened several hours ago and that there was no one in the house. They were aware of that. But they also not knowing that there may still be a gun in the house during a domestic violence situation. A large percentage of Americans own guns and a large number of domestic disputes will have a gun in the house. That doesn't give police the authority to just barge into every domestic situation. The Fourth Amendment was meant to protect the sanctity of the home. Domestic disputes do not give police this authority to barge in whenever it's been alleged, unless there was some evidence of anything physical. And here, the caller said that there was no physical, nothing physical had occurred. And her point was that it was escalating. Well, if it was escalating, the police could have came to the door and said, and figured out, is this a situation that is going to get worse, where we need to be involved, or is this a situation that is just a husband and wife arguing early in the morning? Further, they came into the house and they saw that Brittany was uninjured.  There wasn't anything broken like the caller alleged. At that point, if they had any sort of probable cause or anything like that, that would have dissipated at that point. They should have, like in Jones, at that point, they should have went to the entrance of the home, conducted their investigation from there. The state talks about them needing to take a statement. They could have done that at the door. That doesn't need to be done inside the home. There's nothing required of that. And if they needed to get Mr. Berg to the door, that's something that could also have done from inside the front door. And I briefly want to touch on, if there's no further questions on that, on the other element of the offense, which is the obstruction element. Mr. Berg was in his room. The door was closed, and Brittany was standing there. Thank you. You'll have an option for rebuttal. Thank you. May it please the Court. I'm Jessica Book for the People. And just to respond to the defendant's arguments, he's really hitting on there was no probable cause. And probable cause is the probability of criminal activity, not the certainty or proof beyond a reasonable doubt that a crime was being committed. And under exigent circumstances, in the totality of the circumstances, you have to look at what law enforcement thought, and if they acted reasonably when they entered the home to investigate. And they were investigating the potential crime of domestic battery. That's what they believed that they were facing. When they received the 911 call, it was from the friend of Brittany and Curtis. She was actually friends with the couple. And she told them that they had been fighting. Brittany called her, asked her to come. Around midnight, she went there. She hung out with him a little bit. Curtis was inebriated. The defendant was inebriated and getting very aggressive. So she convinced him to leave the house. At that point in time, he left the house and she stayed there. He came back between 4 and 4.30. That's what she believed. And then he was still drunk, and he picked up where he left off with the arguing. And at that point, she was concerned for her friend's safety  So she went and called. The officers receiving the dispatch notification that there was an issue, a possible domestic, left. It's a rural area, so it took them 15 to 20 minutes to get there. When they arrived, they spoke with Freeze, who stated that there had been an argument, there were things being thrown around, the house was in disarray, and that she had heard from Brittany that the defendant had shot a guy in the home earlier in the day. I don't think anyone is going to contend that a person with a valid COID card has a right to have a gun in their possession in their home. That's not the issue. The issue is, in domestic situations, it's far more likely for the victim to die from a gunshot. Guns in a home with domestic situations that are volatile with arguments and just heated, the passions are ignited, kind of. If he has access to a gun, there's a risk that the victim could be shot. There's a risk that the officers could be shot upon entering the house. So to argue that it's okay that he has a gun kind of doesn't hit the mark in that he can have a gun, but the officers are approaching thinking that he could use the gun. And that's what they're worried about. So the officers get there. They know that the arguing had been earlier in the day but then picked up when he got home, indicating that he was still angry or upset. They knew that things had been thrown around. They knew that there was a possibility that there was a gun in the house because there had been a gun in the house earlier in the day. One of the officers, I believe it was Marconi, when he arrived, he was the second officer to arrive, he heard yelling as well. Wright testified he didn't hear yelling, but Marconi testified he did. So as they approach the house, they come into the garage, and the garage door is open, the main garage door is open that the car enters in, and then the house door between the garage and the house, the wooden one that you couldn't see through was open, but there was a screen door or a storm door that they could see through. They couldn't see anyone in the house. So I believe they relied, the defendant relied somewhat on Kruger. to argue that they were required to knock to enter, and that's not what is required. Just because, they didn't enter just because there was a fire, they entered because they were worried that Brittany was being injured. So they're not required to knock if it would be useless to knock, basically, and they saw in the house that there was no one at the door. So are you suggesting there was probable cause? Probable cause to enter the house? Yes, because they were... What crime was there probable cause to go into the home? It was a domestic situation. Usually domestic batteries are charged from domestic situations. So how was there probable cause for a domestic battery to enter the home to arrest? When Danielle Freese called, it was because she was afraid it was going to escalate. Presumably, she is friends with the couple. Afraid it's going to escalate is before probable cause, isn't it? When you're entering the home to determine if there had been a battery, or going to be a battery, I guess, I guess you could say they were investigating an attempted domestic battery. That could be something where they were entering. The officers knew that there had been a prior domestic at the house. They were told by dispatch there had been a prior domestic. It was never charged. I was not the prosecutor. I don't know why it wasn't charged. There could be many reasons, possibly because Brittany didn't want to cooperate as the victim of the domestic. Regardless of that, they were aware there was a prior domestic. Knowing that, believing that it was a heated situation, there was yelling. They could hear yelling. They knew things had been thrown around. They were going in to investigate a domestic. They don't have to show that a domestic occurred beyond a reasonable doubt. They just have to have the probability that there would be the criminal activity. Counsel, what about when, I guess it was testimony, that they got Brittany to come to the door or came to approach them, and she said, we're fine, we're fine. I think camp was suggesting that law enforcement could have continued their investigation outside the home at that point.  the supposed aggressor being the defendant and Brittany being the victim. When they entered in the house, Brittany was walking towards them and was surprised by them, and they attempted to grab her. I don't know how forcefully, but they attempted to grab her and get her out of the house so they could talk to her. Didn't one of them grab her by the hair? That was later on. That was after she had ran back to the bedroom and was hiding in the bedroom with the defendant. And then she came out and they were attempting to get a hold of her. So that was separate. Initially when they came in the house, she was walking in to the house, or walking kind of towards them, was surprised by them. They attempted to get her out of the house, and then she ran back to the bedroom. They are required, or they, under their protocol, they're required to investigate both parties and to assess both parties. So they didn't get an opportunity to talk to the defendant or see how he looks, just because she says. Couldn't they have done that by knocking? They, based on the reasonable information that they had, they did not believe that they needed to do that by knocking because it was an ongoing argument. So they cite to Jones a lot and talk about Jones, but Jones is distinct from this case, this case, I'm sorry, Your Honor, because when the officer approached, it was a porch so they could see in and they could visually assess both parties. So, yes, it was a domestic, just like this case, but it was different in that both parties were there in front of the officer. And at that point, when both parties said, no, we're good, leave, the officer should have left and the court found that. Here, the officers didn't get to talk to both parties. They couldn't talk to both parties because at the point that they tried to talk to Brittany and she ran back to the bedroom, they had a situation that made it more dangerous for the officers because now they have the victim, alleged victim, back in the bedroom with the defendant behind a closed door, the hallway going down there, it was called the fatal funnel, that's what they refer to it as, because there's doors on both sides so they could not go down the hallway without risking their safety. So at that point, it made it so they could not access the defendant, they could not complete their investigation because she ran back there and shut the door and they could not talk to her anymore. What did the officers observe? I think the 911 call said that the house was in disarray. I think maybe you said that. What did the officers observe once they went into the home as far as the disarray? They weren't able, when they went into the home, it went so fast that I don't believe any of them testified to whether or not they saw disarray prior to once they got the defendant and Brittany basically in custody. At that point, they did do a search of the home and they found the home was in disarray and they were able to locate the shotgun shells or the gun shells and the holes in the wall. There was a broken shower door that looked like it had been broken because of the bullet. So they were able to find that. They did not find the gun, though. Okay, that's all I have right now. Okay, thank you. All right, rebuttal. Your Honor, I just wanted to touch on the domestic battery. I believe that's the first time that's been referred to by the state. I don't think that was in the briefs that this was a domestic battery that they were investigating or had probable cause to investigate. The testimony from Ms. Frese was that it wasn't physical yet. So I don't know how you have probable cause for a domestic battery without any physical contact. That in itself would disprove the domestic battery, that a domestic battery occurred. An attempted domestic battery? I don't even know if that is a charge, to be honest. With regards to checking on Curtis's safety, I find it an unusual method to be having guns drawn at the door to the room that he's in and yelling at him to get out as checking on his safety. Further, one of the officers looked through a window and saw that he was alive and well. But didn't that same officer testify at the hearing that he saw the defendant reaching for something that might put them on alert because of the allegation there may have been a gun in the house, correct? He did that, and 30 seconds later he came out the door voluntarily. So it turned out it was nothing. And I just wanted to touch on that part of the obstruction. The state cites the 10 minutes. The testimony is from when they said their order to come out of the room until the scene was cleared, and a lot of that is police speak. But when they say a scene is cleared, that usually requires them to arrest anyone that needs to be arrested and run through the house to make sure there's no one else there, check and see what evidence needs to be collected, and et cetera. So 10 minutes could be potentially much longer, and the burden is on the state to show how long he was in that room. And I believe the testimony from when he saw him was about 30 seconds before he got up. I believe that was Officer Merck. I can't remember which one. I believe that was his testimony. That brief moment in this hectic situation where his wife Brittany is blocking the door, he can't see outside, he can't confirm they're police officers, it wasn't intended to be obstructing or hindering. Therefore, the state didn't meet their burden with regards to that element either. And briefly, I want to say that there was a zero violation, which the state concedes, and this is a closely balanced case. All three elements are suspect, and there was a credibility contest between the defendant, my client, his wife, and the testimony of the officers. So we ask that first that the conviction be vacated, and if not, we ask that it be remanded for a new trial due to the zero violations and the argument number four. Thank you. All right. Thank you. The court will meet for your arguments. The court will take this matter under advisement and the decision will be poised.